NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-3752
_____

JOHN J. WITKOWSKI

v.

INTERNATIONAL BROTHERHOOD
OF BOILERMAKERS, IRON SHIPBUILDERS,
LOCAL UNION 154,

Appellant


_____


APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN
DISTRICT OF PENNSYLVANIA
(D.C. Civ. Action No. 2:06-cv-00874)
District Judge: Honorable Joy Flowers Conti
_____

Submitted Under Third Circuit LAR 34.1(a)
October 20, 2010
_____

Before: HARDIMAN, GREENAWAY, JR., and NYGAARD, Circuit Judges

(Opinion Filed:  December 22, 2010)


_____

OPINION

GREENAWAY, JR., Circuit Judge.

The International Brotherhood of Boilermakers, Local Union 154 ("the Union")

1

appeals from a judgment of the United States District Court of the Western District of Pennsylvania, entered after a jury verdict, awarding John J. Witkowski ("Witkowski") $540,700 in back pay and $109,300 for emotional distress with respect to Witkowski's Age Discrimination in Employment Act, 29 U.S.C. §§ 621–634 ("ADEA"), and Pennsylvania Human Relations Act, 43 P.S. §§ 951–963 ("PHRA") retaliation claims. The Union argues that the District Court erred by precluding the Union from presenting evidence of Witkowski's social security benefits and disability pension earnings and that the District Court erred by entering a judgment based on a facially inconsistent verdict form. For the following reasons, we will affirm the District Court's judgment.

## I. BACKGROUND

We write solely for the benefit of the parties and recount only the essential facts.

Witkowski was born in 1944 and joined the Union in 1994. In September 2001, Witkowski filed an age discrimination charge with the Pennsylvania Human Rights Commission ("PHRC") because he did not receive any long-term Union assignments. On July 3, 2006, Witkowski commenced this case against the Union, alleging that the Union violated the ADEA and the PHRA by discriminating due to his age and retaliating against him. Prior to trial, the District Court granted Witkowski's Motion in Limine to exclude evidence regarding Witkowski's social security benefits and disability earnings. Witkowski has received approximately $40,800 per year as a disability pension since the mid-1990s. He also began receiving approximately $14,400 per year in social security benefits in 2006. The District Court allowed the Union to ask Witkowski "what his

2

financial circumstances were" on cross-examination, but the Union could not specifically mention the disability pension or social security benefits. (App. 287.)

After a twelve-day trial, the jury returned a verdict on January 29, 2009, finding in favor of the Union on the ADEA and PHRA age discrimination claims and finding in favor of Witkowski on the ADEA and PHRA retaliation claims. The jury found that the Union's actions were not willful and awarded Witkowski $540,700 as back pay and $109,300 for emotional distress. The jury also found that Witkowski had failed to mitigate his damages, but did not deduct from the back pay award due to the lack of mitigation. Because the jury found that the retaliation against Witkowski was not willful, Witkowski was not entitled to liquidated damages.

An issue arose when the Court saw that there was a notation, "270,350 x 2," on the verdict form. After reviewing the verdict form, the Court expressed concern that the jury may have improperly awarded liquidated damages by doubling the back pay award, which was inconsistent with the jury's finding that there was no willfulness. The Court instructed the jury to clarify the back pay award and reminded the jury that they could not award liquidated damages unless they found that the retaliation was willful. The Union did not object to the Court's supplemental instruction. The jury returned a revised verdict form with the calculation, "270,350 x 2," crossed out. The jury did not make any other changes to the verdict form. The judgment was entered on January 30, 2009.

The Union filed a Motion to Alter or Amend the Judgment, pursuant to Federal Rule of Civil Procedure 59(e), or, in the alternative, Order a New Trial. The District

3

Court denied the motion and the Union filed a timely appeal.

## II. JURISDICTION AND STANDARD OF REVIEW

The District Court had jurisdiction over this appeal, pursuant to 28 U.S.C. § 1331. We have jurisdiction to review the District Court's final decision, pursuant to 28 U.S.C. § 1291.

A district court's evidentiary rulings are reviewed for abuse of discretion. United States v. Kemp, 500 F.3d 257, 295 (3d Cir. 2007). The district court's discretion is "construed especially broadly in the context of [Federal Rule of Evidence] 403." Id. "To demonstrate that a district court abused its discretion, an appellant must show that the court's decision was arbitrary, fanciful or clearly unreasonable." Moyer v. United Dominion Indus., Inc., 473 F.3d 532, 542 (3d Cir. 2007).

"When a district court rejects a motion to alter or amend a judgment, the standard of review is whether the district court abused its discretion." Adams v. Gould Inc., 739 F.2d 858, 864 (3d Cir. 1984).

"The standard of review on a motion for a new trial is abuse of discretion, except where a district court bases its denial of the motion on an application of law, in which case the appellate court's review is plenary." McKenna v. City of Phila., 582 F.3d 447, 460 (3d Cir. 2009). To the extent that a motion for a new trial involves review of evidentiary rulings, we review those rulings for abuse of discretion. Id.

## III. ANALYSIS

The Union argues that the District Court erred by: (1) excluding evidence of

4

Witkowski's social security payments and disability pension benefits and (2) entering a judgment based on an inconsistent jury verdict form. The Union claims it is entitled to a new trial on retaliation or, in the alternative, to have the back pay award modified and reduced to $270,350.

A. Exclusion of Evidence

According to Federal Rule of Evidence 403:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

FED. R. EVID. 403. The District Court excluded evidence of Witkowski's disability pension benefits and social security payments because the potential relevance of the payments was outweighed by the risk of unfair prejudice to Witkowski. The payments were not relevant to any back pay award. Specifically, in Pennsylvania, "[t]he collateral source rule provides that payments from a third-party to a victim will not lower the damages that the victim may recover from a wrongdoer." Allegheny Gen. Hosp. v. Philip Morris, Inc., 228 F.3d 429, 442 (3d Cir. 2000). Here, these payments were of questionable relevance to mitigation. Because Witkowski had full custody of four children and he had received disability pension benefits prior to working for the Union, the fact that Witkowski received approximately $55,200 in annual benefits was not strong evidence that he had not sought to mitigate his damages.

The District Court also noted the risk that the jury might be tempted to improperly

take into account monies Witkowski received — his disability pension benefits and social security payments. The Court specifically noted that the jury might think, "[w]ell, we're just going to deduct this amount from what he was receiving, and they wouldn't be deducting it for a failure to mitigate, but just because they would see him as having received some other money, and that's not the standard in terms of determining whether or not a party is entitled to back pay." (App. 716.) The District Court's decision to exclude this evidence was not arbitrary or unreasonable and it was not an abuse of discretion.

Similarly, the District Court did not abuse its discretion when it continued to exclude the evidence despite defense counsel persistently revisiting the issue whenever he believed that plaintiff's counsel opened the door for such evidence to be presented during trial. Indeed, during the opening statement of Witkowski's counsel, Witkowski's direct examination testimony, and Witkowski's expert testimony, defense counsel renewed his objection for the exclusion of the evidence.[1] The District Court continued to rule that the evidence was still deemed more prejudicial than probative. On the other hand, the Court allowed the Union to ask questions regarding Witkowski's financial circumstances. The District Court also allowed the Union to introduce evidence that Union members may choose to work fewer hours for a number of reasons.

---

[1] Defense counsel attempted to introduce the evidence: when Witkowski's lawyer, in his opening statement, implied that Witkowski needed to earn a living to support his children; when Witkowski testified, on direct examination, that he "really needed to get some resources for [his] family," (App. 218–19); and when Witkowski's expert testified regarding economic damages.

Even if the District Court erred by excluding the evidence, any error is harmless and does not support a new trial because the Union prevailed on the mitigation issue and the excluded evidence could not have properly influenced the jury's decision regarding deductions from the back pay award. See Buskirk v. Apollo Metals, 307 F.3d 160, 174 (3d Cir. 2002) (finding that the exclusion of evidence was harmless error where the evidence could not have supported the appellant's claim); Hurley v. Atlantic City Police Dep't, 174 F.3d 95, 112 (3d Cir. 1999) (error is "harmless only if 'it is highly probable that the error did not affect the outcome of the case'" (quoting Lockhart v. Westinghouse Credit Corp., 879 F.2d 43, 53 (3d Cir. 1989)).

Ultimately, the jury found that Witkowski had failed to mitigate his damages, so the Union won on the only issue for which reference to these benefits was relevant. Moreover, the Union did not appeal the jury's finding that no amount should be deducted from Witkowski's back pay damages due to his failure to mitigate. Witkowski claims that the Union failed to meet its burden of showing appropriate economic opportunities that Witkowski failed to pursue and a resulting amount that the jury should deduct from his back pay damages. The Union did not contest this argument.

B.  Jury Verdict

When a jury submits an inconsistent verdict, a district court may, among other options, read the verdict in a manner that will resolve the inconsistencies or resubmit the question to the jury. Acumed LLC v. Advanced Surgical Services, Inc., 561 F.3d 199, 218 (3d Cir. 2009). A "trial court is 'under a constitutional mandate to search for a view

7

of the case that makes the jury's answers consistent.'" McAdam v. Dean Witter Reynolds, Inc., 896 F.2d 750, 764 (3d Cir. 1990) (quoting United States v. 0.78 Acres of Land, More or Less, 81 F.R.D. 618, 621 (E.D. Pa. 1979), aff'd without opinion, 609 F.2d 504 (3d Cir. 1979)).

When the jurors submitted the verdict form that included the notation, "$270,350 x 2," but found no willfulness on the part of the Union (Question 10), the District Court gave the jury detailed supplemental instructions regarding the potential facial inconsistency. Specifically, the District Court offered focused guidance on how the jury might clarify their back pay award. Before resubmitting the question to the jury, the Court stated that "doubling would only take place if there were willfulness found" and clarified that if

> [Y]ou were doubling it because you thought that it was willfulness, you should have checked the answer to [the willfulness question], yes, and then, the Court would do the doubling . . . . So, if you intend your verdict to be the way that it is written here, in terms of the total amount of 650,000, I think it was $650,000, that's fine. . . . I'm going to send you back out to make sure we have a credible verdict.

(App. 678–79.) Before the jurors revised the form, they responded to the Court that they understood the Court's instructions. The Union did not object to the supplemental instructions. When the jury returned the revised verdict form with the calculation crossed out, the verdict form was no longer facially inconsistent.

Upon receiving the revised verdict form, the Court further clarified that "[t]he jury has returned the verdict. It's initialed and eliminated the information that was the

8

doubling information . . .; is that correct?" (App. 685.) The jury responded that the

Court's description of the verdict was correct.

The Union relies on <u>Mumma v. Reading Co.</u>, 247 F. Supp. 252 (E.D. Pa. 1965),

and <u>Mobil Oil Corp. v. Amoco Chems. Corp.</u>, 915 F. Supp. 1333 (D. Del. 1994). These

cases are inapposite. The revised verdict form in this case used no incorrect calculations,

as was the case in <u>Mobil Oil</u>. Moreover, unlike the record in <u>Mumma</u>, there is evidence

in the <u>Witkowski</u> record that fully supports the jury's back pay award.[2]

The jury found that there was not willfulness and, accordingly, the jury did not

double the back pay award. There is no error in the revised verdict form, and there is no

indication that any part of the verdict lacks legal or factual justification. The District

Court did not abuse its discretion in entering judgment based on the revised verdict form

or in denying the motion to order a new trial.

## IV. <u>CONCLUSION</u>

For the reasons set forth above, we will affirm the judgment of the District Court.

---

[2] Witkowski asserts that his expert, James L. Kenkel ("Kenkel"), testified regarding two calculation scenarios showing that Witkowski was entitled to back pay damages of over $540,700. Kenkel's "scenario 2" estimates total damages, excluding emotional distress, at $573,216.04. (App. 465.) The Union does not contest the sufficiency of the evidence, instead arguing only that the revised verdict form was facially inconsistent.